FILED

1   CARMEN A. TRUTANICH, CA Bar No. 86,629
    ctrutanich@lacity.org
2   VALERIE L. FLORES, CA Bar No. 138,572
    valeria.flores@lacity.org
3   PHILLIP H. LAM, CA Bar No. 172,428
    phil.lam@lacity.org
4   OFFICE OF THE CITY ATTORNEY
    CARMEN A. TRUTANICH
5   CITY OF LOS ANGELES
    200 North Main Street, Room 800
6   Los Angeles, California 90012
    Telephone: (213) 978-8100
7   Facsimile:  (213) 978-8312

8   BRIAN K. BROOKEY, CA Bar No. 149,522
    brian.brookey@cph.com
9   PATRICK J. ORME, CA Bar No. 239,025
    patrick.orme@cph.com
10  CHRISTIE, PARKER & HALE, LLP
    350 West Colorado Boulevard, Suite 500
11  Post Office Box 7068
    Pasadena, California 91109-7068
12  Telephone: (626) 795-9900
    Facsimile:  (626) 577-8800

13

14  Attorneys for Plaintiff,
    CITY OF LOS ANGELES

15

                UNITED STATES DISTRICT COURT
16
              CENTRAL DISTRICT OF CALIFORNIA
17
                                    CV11-08596-GW(SSx)
18  CITY OF LOS ANGELES, a           Case No.
    municipal corporation,
19                                   COMPLAINT FOR
            Plaintiff,               TRADEMARK INFRINGEMENT
20                                   AND UNFAIR COMPETITION
        vs.
21                                   [DEMAND FOR JURY TRIAL]
    LAFD FOUNDATION, INC., a
22  California non-profit public benefit
    corporation,
23
            Defendant.
24

25

26

27

28

1        Plaintiff, City of Los Angeles ("Plaintiff" or "Los Angeles" or "City of Los

2   Angeles") alleges as follows:

3   **I.**    **JURISDICTION**

4       1.    This is an action for trademark infringement and unfair competition

5   under the Trademark Act, Title 15 U.S.C. § 1125(a); for common law unfair

6   competition; and for statutory unfair competition under California Business and

7   Professions Code § 17200 *et seq.*

8       2.    Jurisdiction arises under 28 U.S.C. §§ 1331 and 1338.  This Court

9   has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §

10   1367.

11      3.    This action arises out of the transaction of business and other

12   activities of Defendant LAFD Foundation, Inc. ("Defendant" or "Foundation")

13   within the Central District of California, and actual harm to Los Angeles in this

14   judicial district resulting from Defendant's unlawful conduct as alleged below.

15   Los Angeles alleges on information and belief that Defendant regularly conducts

16   and solicits business within this district.  Moreover, a substantial part of the

17   events or omissions giving rise to the claims is occurring and has occurred in this

18   district.  Accordingly, venue is proper under 28 U.S.C. § 1391.

19   **II.**    **PARTIES**

20      4.    Plaintiff Los Angeles is a municipal corporation with its principal

21   place of business at 200 North Main Street, Los Angeles, California.

22      5.    On information and belief, Defendant Foundation is a California

23   nonprofit public benefit corporation with a principal place of business at 201

24   North Rossmore Avenue, Los Angeles, California.

25   **III.**   **FACTUAL BACKGROUND**

26      6.    Plaintiff Los Angeles founded the Los Angeles Fire Department

27   ("LAFD") in 1865.  Since its foundation, "Los Angeles Fire Department,"

28

CHRISTIE, PARKER & HALE, LLP

1  "LAFD," and LAFD logos (collectively the "LAFD Marks") have come to be
2  associated with LAFD's exemplary work.

3       7.     As early as 1997, Plaintiff began using the LAFD Marks in
4  fundraising activities to benefit the LAFD and its personnel.  Through use by
5  LAFD and its authorized licensees, the LAFD Marks have been used to solicit
6  donations, in-kind and monetary, from the general public.   The LAFD has a long
7  history of engaging in fundraising events, ranging from neighborhood fundraisers
8  benefiting local fire stations to formal department-wide fundraising programs.

9       8.     Plaintiff Los Angeles through the LAFD currently licenses the use of
10  the LAFD Marks to the Los Angeles Fire Department Foundation for use in
11  fundraising to support the Los Angeles Fire Department and its personnel.

12      9.     On June 30, 2008, Plaintiff Los Angeles and Defendant Foundation
13  entered into a Memorandum of Agreement wherein Defendant Foundation agreed
14  to become an "authorized fundraising organization of the Fire Department" and
15  enter into a license prior to use of the LAFD Marks.  A copy of the Memorandum
16  of Agreement is attached to this Complaint as Exhibit 1.

17      10.    On March 11, 2009, Defendant Foundation executed a Trademark
18  License Agreement.  Plaintiff Los Angeles never executed the Trademark License
19  Agreement.   A copy of the Trademark License Agreement is attached to this
20  Complaint as Exhibit 2.

21      11.    On October 2, 2009, Defendant Foundation notified Plaintiff Los
22  Angeles of its withdrawal from the Memorandum of Agreement Defendant
23  Foundation has continued using "The LAFD Foundation, Inc." name since its
24  notice of withdrawal.

25      12.    On or about October 3, 2011, Plaintiff became aware of Defendant
26  Foundation's plans to hold an event on October 22, 2011.   Defendant's
27  announcement incorporates the entire LAFD mark in the banner for the event
28  stating, "The LAFD Foundation, Inc. cordially invites you."   Defendant

CHRISTIE, PARKER & HALE, LLP

-3-

1   Foundation  is improperly using the LAFD mark in a manner that is likely to
2   cause confusion or  association with Plaintiff and the LAFD.  On information and
3   belief, a copy of the announcement is attached to this complaint as Exhibit 3.
4   Nothing in the announcement indicates that any funds raised will benefit the Los
5   Angeles Fire Department or its personnel.

6        13.   Defendant Foundation's use of "The LAFD Foundation, Inc.," is
7   likely to cause confusion among contributors to fundraising in support of the Los
8   Angeles Fire Department.

9        14.   Plaintiff Los Angeles alleges on information and belief that
10  Defendant Foundation's improper incorporation and use of the LAFD mark is
11  willful, and that Defendant intends to trade on Plaintiff's goodwill and to cause
12  consumer confusion.

13                          <u>COUNT I</u>
14              **(Infringement of an Unregistered Trademark)**

15       15.   Plaintiff Los Angeles repeats, realleges, and incorporates by
16  reference the allegations of paragraphs 1 through 14 of this complaint as though
17  set forth fully here.

18       16.   Defendant's use of one or more of the LAFD Marks constitutes a
19  false and misleading description and association in violation of 15 U.S.C. §
20  1125(a).  Defendant has used, and is using, Plaintiff's unregistered LAFD mark in
21  a way that is likely to cause confusion, mistake, and deception among the public
22  and contributors to the Los Angeles Fire Department Foundation, who will be led
23  to erroneously believe that Defendant's fundraising activities using the LAFD
24  mark were approved by or that Defendant is otherwise affiliated or associated
25  with, the City of Los Angeles and the LAFD.

26       17.   Plaintiff Los Angeles alleges on information and belief that in
27  continuing to use the name "The LAFD Foundation, Inc.," which incorporates the
28  entire LAFD mark, Defendant intended and intends to misrepresent an association

-4-

CHRISTIE, PARKER & HALE, LLP

1  with the City of Los Angeles, the Los Angeles Fire Department, and the Los
2  Angeles Fire Department Foundation, and to trade on Los Angeles' goodwill and
3  reputation in the LAFD Marks.
4        18.    Plaintiff Los Angeles has no speedy remedy or adequate remedy at
5  law.  By misappropriating the LAFD mark, Defendant has injured and is likely to
6  continue to injure Plaintiff Los Angeles' reputation, and Plaintiff is entitled to
7  preliminary and permanent injunctive relief to prevent future harm, and to
8  damages in an amount according to proof.
9        19.    This is an exceptional case, entitling Plaintiff Los Angeles to an
10  award of attorneys' fees under 15 U.S.C. § 1117.

11  **COUNT II**
12  **(Common Law Unfair Competition)**

13        20.    Plaintiff Los Angeles repeats, realleges, and incorporates by
14  reference the allegations of paragraphs 1 through 19 of this complaint as though
15  set forth fully here.
16        21.    This count arises under the common law of unfair competition of the
17  State of California.
18        22.    Defendant's activities alleged above constitute unfair competition
19  and an infringement of Plaintiff's common law trademark rights in the LAFD
20  Marks Plaintiff owns.  This unfair competition has caused and, unless enjoined,
21  will continue to cause, irreparable harm to the City of Los Angeles.
22        23.    Plaintiff Los Angeles has no adequate remedy at law for Defendant
23  Foundation's acts of unfair competition, and thus is entitled to preliminary and
24  permanent injunctive relief prohibiting Defendant from continuing to infringe Los
25  Angeles' common law trademark rights, from continuing to engage in unfair
26  competition, and from otherwise using the LAFD Marks.
27
28

CHRISTIE, PARKER & HALE, LLP

## COUNT III

### (Unfair Competition under Cal. Bus. and Prof. Code §17200)

24.     Plaintiff Los Angeles repeats, realleges, and incorporates by reference the allegations of paragraphs 1 through 24 of this complaint as though set forth fully here.

25.     Defendant's acts as alleged above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, under Cal. Bus. and Prof. Code §17200 *et seq*.   Defendant's unlawful conduct has caused and, unless enjoined, will continue to cause, irreparable harm to the City of Los Angeles.

26.     Plaintiff Los Angeles has no adequate remedy at law for Defendant Foundation's unlawful conduct, and thus is entitled to preliminary and permanent injunctive relief prohibiting Defendant from continuing to engage in that conduct, and from otherwise using the LAFD Marks.

### PRAYER FOR RELIEF

**THEREFORE**, the City of Los Angeles requests judgment as follows:

1.     That Los Angeles be awarded monetary damages, including punitive and exemplary damages, in an amount according to proof;

2.     That a temporary and permanent injunction issue enjoining Defendant, its partners, agents, servants, employees, attorneys, and those persons in active concert of using in any manner the LAFD Marks, from competing unfairly with Los Angeles, from falsely associating Defendant's activities with the Los Angeles Fire Department, and specifically requiring that Defendant:

        a.     not commit or contribute to any acts calculated to cause the public to believe that Defendant is in any manner associated with or otherwise affiliated with the Los Angeles Fire Department;

        b.     remove "LAFD" from its organizational name;

        c.     not conduct any events using the LAFD Marks; and

CHRISTIE, PARKER & HALE, LLP

d.      not otherwise compete unfairly with the City of Los Angeles in any manner.

3.      That the City of Los Angeles be awarded monetary damages, including punitive and exemplary damages, in an amount according to proof;

4.      That damages resulting from Defendant's willful trademark infringement be trebled in accordance with the provisions of 15 U.S.C. § 1117;

5.      That the City of Los Angeles be awarded its attorneys' fees and costs; and

6.      That the City of Los Angeles be awarded such other relief as the Court deems appropriate.

## JURY DEMAND

The City of Los Angeles demands a trial by jury on all issues so triable.

DATED:  October 17, 2011

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By

Brian K. Brookey
Patrick J. Orme

Attorneys for Plaintiff,
CITY OF LOS ANGELES

SCL PAS1143174.1-*-10/17/11 2:54 PM

-7-

CHRISTIE, PARKER & HALE, LLP

# EXHIBIT 1

# MEMORANDUM OF AGREEMENT

## BETWEEN

## LOS ANGELES FIRE DEPARTMENT

## AND

## LAFD FOUNDATION, INC.

This Memorandum of Agreement (this "MOA") is entered into as of June 20, 2008 (the "Effective Date") by and between the City of Los Angeles, a municipal corporation (the "City"), acting by and through its Board of Fire Commissioners (the "Board"), the Los Angeles Fire Department (the "Fire Department"), acting by and through its Fire Chief (the "Fire Chief"), and the LAFD Foundation, Inc., a California non-profit public benefit corporation (the "Foundation").

## RECITALS

WHEREAS, the Fire Department is a department of the City.  The Chief Administrative Officer of the Fire Department is the Fire Chief.

WHEREAS, the Board and the Fire Department support the establishment of the Foundation.

WHEREAS, the Foundation was incorporated as a California non-profit public benefit corporation by filing the articles of incorporation, a copy of which are attached hereto as Appendix A (as amended from time to time, the "Articles"), with the Secretary of State of California on February 25, 2008.

WHEREAS, the Foundation is governed by the Articles and its bylaws, a copy of which are attached hereto as Appendix B (as amended from time to time, the "Bylaws").  The activities and affairs of the Foundation will be conducted and all of its corporate powers will be exercised by or under the direction of its Board of Directors, the members of which are designated, selected and elected in accordance with the Bylaws.

WHEREAS, the Foundation is organized for those purposes set forth in the Articles and to otherwise engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California.

WHEREAS, the purpose of this MOA is to establish a written understanding between the Fire Department and the Foundation to define each party's respective role and responsibilities, and to set forth the financial relationship between the Fire Department and the Foundation.

NOW, THEREFORE, in consideration of the recitals and mutual obligations herein contained, the Fire Department and the Foundation hereby agree that the understanding between them is as follows:

Exhibit 1
Page 8

I.   REPRESENTATIVES OF PARTIES.

    A.   The representatives of the respective parties are authorized to administer this MOA and to whom formal notices, demands, requests and communication shall be given are as follows:

    For the Fire Department:        Fire Chief, currently Douglas Barry

    For the Foundation:           Chairman, currently Marc Cohen

    B.   All notices required or permitted by this MOA shall be in writing and may be delivered in person, or may be sent by regular, certified or registered mail or by facsimile transmission during normal business hours, and shall be deemed sufficiently given if served in a manner specified in this paragraph.

II.   TERM. The term of this MOA shall be for three (3) years beginning on the Execution Date.

III.   ROLES AND RESPONSIBILITIES OF PARTIES. The Fire Department and the Foundation hereby agree that the understanding between them as to the respective roles, responsibilities and financial relationship is as follows:

    A. Authority; Fundraising. The Foundation has been designated by the Fire Department as an authorized fundraising organization of the Fire Department. The Foundation is authorized to raise funds in furtherance of its specific purposes including those provided herein.

    B. Employment Practices. The Foundation will make all hiring, retention and compensation decisions with respect to its employees, consultants and advisors. All such decisions shall be subject to all applicable laws. The employees, consultants and advisors of the Foundation will not be deemed employees, consultants and advisors of the Board, the Fire Department or the City.

    C. Promotion. The Fire Department will use its reasonable efforts to provide appropriate informational materials about the Foundation at each of its firehouses and stations, as well as on the Fire Department's website (www.lafd.org) and at other Fire Department work locations.

    D. Intellectual Property. Prior to usage of intellectual property, the Foundation agrees to enter into a license agreement pursuant to which the City shall grant to the Foundation a non-exclusive, royalty-free license to use the Fire Department's intellectual property in connection with the Foundation's purposes during the existence of the Foundation.

    E. Funding Requests. The Fire Department will provide the Foundation with information relating to the Fire Department's approved funding requests. The Foundation may use such information in determining the use of the Foundation's assets.

Exhibit 1
Page 9

F. <u>Financial Statements</u>. At the request of the City, the Fire Chief or the Board, the Foundation will promptly provide to the requesting party the then most recently available (i) annual financial statements (and, if such financial statements have been audited, the applicable audit report with respect thereto) and (ii) tax returns for the Foundation.

G. <u>Disposition of Assets Upon Dissolution</u>. Pursuant to the Articles, upon dissolution, the net assets of the Foundation will be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or shall be distributed to federal, state or local government, for a public purpose.

IV.     GOVERNING LAW. This MOA will be governed by and construed and enforced in accordance with the laws of the State of California without reference to any principles of conflicts of law thereof.

V.      ENTIRE AGREEMENT; AMENDMENTS; WAIVERS. This MOA constitutes the entire agreement and understandings between the parties hereto, and supersedes all prior agreements, promises, negotiations or representations relating to the subject matter hereof. All amendments to this MOA must be in writing and signed by the parties hereto. No waiver hereunder will be valid unless in writing and signed by the parties hereto.

*[Signature page to follow.]*

Exhibit 1
Page 10

IN WITNESS WHEREOF, the parties hereto have agreed and signed this MOA as of the Effective Date.

**LAFD Foundation, Inc.,** a California non-profit public benefit corporation

Name: Marc Cohen
Title: Chairman

Name: Jay Grodin
Title: Secretary

**Los Angeles Fire Department,** a department of the City of Los Angeles, acting by and through its Fire Chief

Name: Douglas L. Barry
Title: Fire Chief

**ATTESTED BY:**

Name: Dacia E. Gonzalez
Title:   Executive Administrative Assistant III
         Fire Chief's Office

**APPROVED AS TO FORM:**

**Los Angeles City Attorney**
**ROCKARD J. DELGADILLO CITY ATTORNEY**

Name: Janet Jackson
Title:   Deputy City Attorney

Exhibit 1
Page 11

4

## Appendix A

### Articles of Incorporation

(See attached.)

Exhibit 1
Page 12

APPENDIX A

3035494



## State of California
### Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of _____ page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

FEB 2 7 2008

_____

DEBRA BOWEN
Secretary of State

Exhibit 1
Page 13
OSP 06 99752

3035494



ENDORSED - FILED
IN THE OFFICE OF THE
SECRETARY OF STATE
OF THE STATE OF CALIFORNIA

FEB 25 2008

### ARTICLES OF INCORPORATION
### OF
### LAFD Foundation, Inc.,
### A California Nonprofit Public Benefit Corporation

1.   <u>Name</u>.  The name of this corporation (the "Corporation") is LAFD Foundation, Inc.

2.   <u>Purposes</u>.  The Corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person.  It is organized under the California Nonprofit Public Benefit Corporation Law for charitable purposes.  The foregoing is a statement of purposes only, and is not intended to be construed to limit in any way the powers of the Corporation under section 5140 of the California Nonprofit Public Benefit Corporation Law or other applicable law, all of which are expressly reserved.  The Corporation is organized for charitable and educational purposes and for the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code.  The Corporation will provide products and services to the Los Angeles Fire Department, including the men and women who work for the Los Angeles Fire Department, the firehouses, stations and its other specialized units.  In furtherance of these purposes, the Corporation's activities shall include the provision of financial and other support and assistance, and the solicitation, collection and raising of funds, donations, pledges, securities, obligations, gifts and property of any nature whatsoever and the donations of the same for the Los Angeles Fire Department, including the men and women who work for the Los Angeles Fire Department, the firehouses, stations and its other specialized units.  The property of the Corporation is irrevocably dedicated to charitable and educational purposes and no part of the net income or assets of the Corporation shall ever inure to the benefit of any director, officer, or member thereof, or to the benefit of any private person.

3.   <u>Powers</u>.  The Corporation shall have all the powers of a natural person, subject only to any limitations imposed by these Articles of Incorporation, the bylaws of the Corporation and applicable law.

4.   <u>Directors</u>.  The number of directors of the Corporation shall be established by its bylaws.

5.   <u>Members</u>.  The Corporation shall have no voting members within the meaning of the Nonprofit Corporation Law.  The Corporation's board of directors may, in its discretion, admit individuals or other legal entities to one or more classes of non-voting membership, with the class or classes having such rights and obligations as the board of directors deems appropriate.

6.    <u>Agent for Service of Process</u>.  The name of the Corporation's initial agent for service of process is:

> Corporation Service Company which will do business in California as
> CSC-Lawyers Incorporating Service

7.    <u>Tax Provisions</u>.

(a)    No part of the net earnings of the Corporation shall inure to the benefit of, or be distributable to its members, trustees, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 2 hereof.

(b)    No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation (except to the extent authorized by section 501(h) of the Internal Revenue Code, or the corresponding section of any future federal tax code), and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office.

(c)    Notwithstanding any other provision of these Articles of Incorporation, the Corporation shall not carry on any other activities not permitted to be carried on (i) by a corporation exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or (ii) by a corporation, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

(d)    In any taxable year in which the Corporation is a private foundation as described in section 509(a) of the Internal Revenue Code, or the corresponding section of any future federal tax code:

(i)    the Corporation will distribute its income for each tax year at a time and in a manner as not to become subject to the tax on undistributed income imposed by section 4942 of the Internal Revenue Code, or the corresponding section of any future federal tax code;

(ii)    the Corporation will not engage in any act of self-dealing as defined in section 4941(d) of the Internal Revenue Code, or the corresponding section of any future federal tax code;

(iii)    the Corporation will not retain any excess business holdings as defined in section 4943(c) of the Internal Revenue Code, or the corresponding section of any future federal tax code;

(iv)    the Corporation will not make any investments in a manner as to subject it to tax under section 4944 of the Internal Revenue Code, or the corresponding section of any future federal tax code; and

Exhibit 1
Page 15

    (v)  the Corporation will not make any taxable expenditures as defined in section 4945(d) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

    8.  <u>Dissolution</u>. Upon the dissolution of the Corporation, assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, for a public purpose. Any such assets not so disposed of shall be disposed of by a Court of Competent Jurisdiction of the county in which the principal office of the Corporation is then located, exclusively for such purposes or to such organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

Date: February 25, 2008      _Elizabeth C. Sluder_
               Elizabeth C. Sluder, Incorporator



Exhibit 1
Page 16

# Appendix B

## Bylaws

(See attached.)

Exhibit 1
Page 17

<u>**APPENDIX B**</u>

*Execution Version*

**BYLAWS**
**OF**
**LAFD Foundation, Inc.,**
**A California Nonprofit Public Benefit Corporation**

1. <u>Name</u>. The name of this corporation (the "<u>Company</u>") is LAFD Foundation, Inc.

2. <u>Principal Office of the Company</u>. The principal office for the transaction of the activities and affairs of the Company is located at 201 N. Rossmore Avenue, Los Angeles, CA 90004. The board of directors of the Company (the "<u>Board</u>") may change the location of the principal office. Any such change in location, if not reflected in an amendment to these Bylaws, shall be noted by the Secretary on these Bylaws opposite this Section 2. The Board may at any time establish branch or subordinate offices at any place or places where the Company is qualified to conduct its activities.

3. <u>Purposes</u>. The Company is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the California Nonprofit Public Benefit Corporation Law for charitable purposes. The foregoing is a statement of purposes only, and is not intended to be construed to limit in any way the powers of the Company under section 5140 of the California Nonprofit Public Benefit Corporation Law or other applicable law, all of which are expressly reserved. The Company is organized for charitable and educational purposes and for the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code. The Company will provide products and services to the Los Angeles Fire Department, including the men and women who work for the Los Angeles Fire Department, the firehouses, stations and its other specialized units. In furtherance of these purposes, the Company's activities shall include the provision of financial and other support and assistance, and the solicitation, collection and raising of funds, donations, pledges, securities, obligations, gifts and property of any nature whatsoever and the donations of the same for the Los Angeles Fire Department, including the men and women who work for the Los Angeles Fire Department, the firehouses, stations and its other specialized units. The property of the Company is irrevocably dedicated to charitable and educational purposes and no part of the net income or assets of the Company shall ever inure to the benefit of any director, officer, or member thereof, or to the benefit of any private person.

4. <u>Construction and Definitions</u>. Unless the context otherwise requires, the general provisions, rules of construction and definitions in the California Corporations Code ("<u>Corporations Code</u>") shall govern the construction of these Bylaws. Without limiting the generality of the preceding sentence, the masculine gender includes the feminine and neuter, the singular includes the plural, the plural includes the singular, and the term "person" includes both a legal entity and a natural person.

5. <u>No Members</u>. The Company shall have no voting members within the meaning of the Corporations Code. The Company's Board may, in its discretion, admit individuals or other legal entities to one or more classes of nonvoting membership, with the class or classes having such rights and obligations as the Board deems appropriate.

Exhibit 1
Page 18

6. Board of Directors.

    a. General Powers. Subject to the provisions and limitations of the Corporations Code and any other applicable laws, the Company's activities and affairs shall be managed, and all corporate powers shall be exercised, by or under the direction of the Board.

    b. Specific Powers. Without limiting the generality of the general powers set forth in Section 6(a) of these Bylaws, but subject to the same limitations, the Board shall have the power to:

        i. appoint and remove, at the pleasure of the Board, all corporate officers, agents and employees; prescribe powers and duties for them as are consistent with law, the Articles of Incorporation and these Bylaws; and fix their compensation for serving as corporate officers, agents or employees;

        ii. change the principal office or the principal business office in California from one location to another; cause the Company to be qualified to conduct its activities in any other state, territory, dependency or country; and conduct its activities in or outside California;

        iii. borrow money and incur indebtedness on the Company's behalf and cause to be executed and delivered for the Company's purposes, in the corporate name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations, and other evidences of indebtedness and securities; and

        iv. enter into contracts and take any other action that serves to bind the Company.

    c. Number of Directors. The Board shall consist of at least three (3) but no more than fifteen (15) directors unless changed by amendment to these Bylaws. The exact number of directors shall be fixed, within those limits, by a resolution adopted by the Board.

    d. Restriction on Interested Persons as Directors. No more than forty nine percent (49%) of the persons serving on the Board may be interested persons. For the purposes of this Section 6(d), an "interested person" is (i) any person compensated by the Company for services rendered to the Company within the previous twelve (12) months, whether as a full-time or part-time employee, independent contractor, or otherwise, and (ii) any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter in-law, mother-in-law or father-in-law of any such person. However, any violation of this Section 6(d) shall not affect the validity or enforceability of transactions entered into by the Company.

    e. Vacancies on Board of Directors. A vacancy or vacancies on the Board shall occur in the event of (i) the death, removal or resignation of any director; (ii) the declaration by resolution of the Board of a vacancy in the office of a director who has been convicted of a felony, declared of unsound mind by a court order, or found by final order or judgment of any court to have breached a duty under the California Nonprofit Public Benefit Corporation Law, Chapter 2, Article 3; or (iii) an increase in the authorized number of directors.

f. <u>Resignation of Directors</u>.  Except as provided below, any director may resign by giving written notice to the Board or to an executive officer of the Company.  The resignation shall be effective when the notice is given unless it specifies a later time for the resignation to become effective.  If a director's resignation is effective at a later time, the Board may elect a successor to take office as of the date when the resignation becomes effective.  Except on notice to the California Attorney General, no director may resign if the Company would as a result be left without a duly elected director.

g. <u>Vacancies Filled by Board</u>.  Vacancies on the Board may be filled by approval of the Board or, if the number of directors then in office is less than a quorum, by (i) the unanimous written consent of the directors then in office, (ii) the affirmative vote of a majority of the directors then in office at a meeting held according to notice or waivers of notice complying with Corporations Code Section 5211, or (iii) a sole remaining director.

h. <u>No Vacancy on Reduction of Number of Directors</u>.  Any reduction of the authorized number of directors shall not result in any director being removed before the death or resignation of such director.

i. <u>Place of Meetings of Board of Directors</u>.  Meetings of the Board shall be held at any place within or outside California that has been designated by resolution of the Board or in the notice of the meeting or, if not so designated, at the principal office of the Company.

j. <u>Meetings by Telephone or Other Telecommunications Equipment</u>.  Any meeting of the Board may be held by conference telephone, electronic video screen communication or other communications equipment.  Participation in a meeting through use of conference telephone, electronic video screen communication or other communications equipment constitutes presence in person at the meeting as long as all members participating in the meeting are able to hear one another.  Participation in a meeting through use of electronic video screen communication or other communications equipment (other than conference telephone) shall constitute presence in person at the meeting if all of the following conditions are satisfied:

i. each director participating in the meeting can communicate concurrently with all other members;

ii. each director is provided the means of participating in all matters before the Board, including, without limitation, the capacity to propose, or to interpose an objection to, a specific action to be taken by the Company; and

iii. the Board has adopted and implemented a means of verifying both of the following:

(1) a person participating in the meeting is a director or other person entitled to participate in the meeting; and

(2) all actions of or votes by the Board are taken or cast only by the directors and not by persons who are not directors.

Exhibit 1
Page 20

k.  Meetings; Notice.

      i.      An annual meeting of the Board shall be at such time and place as the chairperson of the Board, if any, the president, the secretary or any two (2) directors shall specify, for purposes of organization, election of officers and transaction of other business. Special meetings of the Board for any purpose may be called at any time by the chairperson of the Board, if any, the president, the secretary or any two (2) directors.

      ii.      Notice of the time and place of meetings of the Board shall be given to each director by (i) personal delivery of written notice; (ii) first-class mail (or air mail in the case of international mail), postage prepaid; (iii) telephone, including a voice messaging system or other system or technology designed to record and communicate messages, either directly to the director or to a person at the director's office who would reasonably be expected to communicate that notice promptly to the director; (iv) facsimile; (v) electronic mail; or (vi) other generally accepted electronic means.  All such notices shall be given or sent to the director's address or telephone number as shown on the Company's records.  Notices sent by first-class mail (or air mail in the case of international mail) shall be deposited in the United States mail at least four (4) days before the date set for the meeting.  Notices given by personal delivery, telephone, electronic mail or other electronic means shall be delivered, telephoned or sent at least forty-eight (48) hours before the date set for the meeting.  The notice shall state the time and the place, if the place is other than the Company's principal office.

      iii.      No meeting of the Board shall occur on any day or time that for any director entitled to attend the meeting is a day or time on or at which such director would be precluded by religious principle from attending the meeting, unless such director shall otherwise provide written consent prior to the meeting.

      l.      Waiver of Notice.  Notice of a meeting need not be given to any director who, either before or after the meeting, signs a waiver of notice, a written consent to the holding of the meeting, or an approval of the minutes of the meeting, or to any director who attends the meeting and who, before or at the beginning of the meeting, does not protest the lack of notice to such director.  The waiver of notice or consent need not specify the purpose of the meeting.  All such waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

      m.  Quorum.  A majority of the authorized number of directors shall constitute a quorum for the transaction of any business.  Every action taken or decision made by a majority of the directors present at a duly held meeting of the Board at which a quorum is present shall be an act of the Board, subject to any more stringent provisions of the Corporations Code, including, without limitation, those provisions relating to (i) approval of contracts or transactions in which a director has a direct or indirect material financial interest, (ii) approval of certain transactions between corporations having common directorships, (iii) creation of and appointments to committees of the Board, and (iv) indemnification of directors.  A meeting of the Board at which a quorum is initially present may continue to transact business, despite the withdrawal of some directors from the meeting if any action or decision made is approved by at least a majority of the required quorum for the meeting or such greater number as is required by the Corporations Code.

Exhibit 1
Page 21

n.  Adjournment.  A majority of the directors present at a meeting of the Board, whether or not a quorum is present, may adjourn the meeting to another time and place.  Notice of the time and place of holding an adjourned meeting need not be given unless the original meeting is adjourned for more than forty-eight (48) hours.  If the original meeting is adjourned for more than forty-eight (48) hours, notice of an adjournment to another time and place shall be given, before the time of the adjourned meeting, to the directors who were not present at the time of the adjournment.

o.  Action Without a Meeting.  Any action that the Board is required or permitted to take may be taken without a meeting if all members of the Board consent in writing to the action; provided that the consent of any director who has a material financial interest in a transaction to which the corporation is a party and who is an "interested director" as defined in Corporations Code Section 5233 shall not be required for approval of that transaction.  Such action by written consent shall have the same force and effect as any other validly approved action by the Board.  All such consents shall be filed with the minutes of the proceedings of the Board.

p.  Creation and Powers of Committees of the Board of Directors.  The Board, by resolution adopted by a majority of the directors then in office, may create one or more committees, each consisting of two (2) or more directors, to serve at the pleasure of the Board. Appointments to committees of the Board shall be by majority vote of the directors then in office.  The Board may appoint one or more directors as alternate members of any such committee who may replace any absent member at any meeting.  Any such committee shall have the authority of the Board, to the extent provided in the Board resolution creating the committee, except that no committee of the Board may:

i.     fill vacancies on the Board or any committee of the Board;

ii.    amend or repeal these Bylaws or adopt new Bylaws for the Company;

iii.   approve any contract or transaction to which the Company is a party and in which one or more of its directors has a material financial interest, except as special approval is provided for in Corporations Code Section 5233(d)(3);

iv.    amend or repeal any resolution of the Board that by its express terms is not so amendable or repealable; or

v.     create any other committees of the Board or appoint the members of committees of the Board.

q.  Meetings and Action of Committees of the Board of Directors.  Meetings and actions of committees of the Board shall be governed by, held, and taken under the provisions of these Bylaws concerning meetings and other actions by the Board, except that the calling of and time for meetings of such committees may be set either by resolution of the Board or, if none, by resolution of the committee.  Minutes of each meeting of each committee shall be kept and shall be filed with the corporate records.  The Board may adopt rules for the governance of any

Exhibit 1
Page 22

committee so long as the rules are consistent with these Bylaws.  If the Board has not adopted rules for the governance of any committee, the committee may do so.

        r.  <u>Compensation</u>.  No director shall receive a salary or other compensation for fulfilling the duties of director.  This paragraph shall not affect a director's ability to receive a reasonable salary or other compensation for any other position or service rendered, including, but not limited to, the role of officer of the Company.

    7.  <u>Officers</u>.

        a.  <u>Offices Held</u>.  The officers of this Company shall be a president, a secretary and a chief financial officer.  The Company, at the discretion of the Board, may also have a chairman of the Board, one or more vice presidents, one or more assistant secretaries, a treasurer and one or more assistant treasurers, and such other officers as may be appointed under Section 7(b) of these Bylaws.  Any number of offices may be held by the same person, except that neither the secretary nor the chief financial officer may serve concurrently as the president or the chairman of the Board.

        b.  <u>Election of Officers</u>.  The officers of the Company, except any appointed under Section 7(c) of these Bylaws, shall be appointed annually by the Board and shall serve at the pleasure of the Board, subject to the rights of any officer under any employment contract with the Company.

        c.  <u>Appointment of Other Officers</u>.  The Board may appoint and authorize the chairman of the Board, the president or another officer to appoint any other officers that the Company may require.  Each officer so appointed shall have the title and authority granted by the Board, shall be appointed annually by the appointing officer, shall serve at the pleasure of the Board, and shall perform the duties specified in these Bylaws or established by the Board.

        d.  <u>Resignation of Officers</u>.  An officer may resign at any time by giving written notice to the Board.  The resignation shall take effect on the date the notice is received or at any later time specified in the notice.  Unless otherwise specified in the notice, the resignation need not be accepted to be effective.  Any resignation shall be without prejudice to the rights of the Company under any contract to which the officer is a party.

        e.  <u>Vacancies in Office</u>.  A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in these Bylaws for normal appointments to that office.

        f.  <u>Responsibilities of Officers</u>.

        i.  <u>Chairman of the Board</u>.  If a chairman of the Board is elected, he or she shall preside at meetings of the Board and shall exercise and perform such other powers and duties as the Board may assign from time to time.  If there is no president, the chairman of the Board shall also be the chief executive officer of the Company and shall have the powers and duties of the president of the Company set forth in these Bylaws.

Exhibit 1
Page 23

ii.   President.  Subject to such supervisory powers as the Board may give to the chairman of the Board, if any, and subject to the control of the Board, the president, if any, shall be the manager and chief executive officer of the Company and shall supervise, direct and control the Company's activities, affairs and officers.  In the absence of the chairman of the Board, or if there be none, the president shall preside at all meetings of the Board.  The president shall have such other powers and duties as the Board or these Bylaws may specify.

iii.   Vice Presidents.  If the president is absent or disabled, the vice presidents, if any, in order of their rank as fixed by the Board, or if not ranked, a vice president designated by the Board, shall perform all duties of the president.  When so acting, a vice president shall have all powers of and be subject to all restrictions on the president.  The vice presidents shall have such other powers and perform such other duties as the Board or these Bylaws may specify.

iv.   Secretary.  The secretary shall keep or cause to be kept, at the Company's principal office or such other place as the Board may direct, a book of minutes of all meetings, proceedings, and actions of the Board and of committees of the Board.  The minutes of each meeting shall include the time and place at which the meeting was held; whether the meeting was annual, general or special, and, if special, how authorized; the notice given; and the names of persons present at Board and committee meetings.  The secretary shall keep or cause to be kept, at the Company's principal office in California, a copy of the articles of incorporation and these Bylaws, as amended to date.  The secretary shall give, or cause to be given, notice of all meetings of the Board and of committees of the Board that these Bylaws require to be given.  The secretary shall have such other powers and perform such other duties as the Board or these Bylaws may specify.

v.   Chief Financial Officer.  The chief financial officer shall keep and maintain, or cause to be kept and maintained, adequate and correct books and accounts of the Company's properties and transactions.  The chief financial officer shall send or cause to be given to the directors such financial statements and reports as are required to be given by law, by these Bylaws or by the Board.  The chief financial officer shall (i) deposit, or cause to be deposited, all money and other valuables in the name and to the credit of the Company with such depositories as the Board may designate; (ii) disburse the Company's funds as the Board may order; (iii) render to the president, chairman of the Board, if any, and the Board, when requested, an account of all transactions and of the financial condition of the Company; and (iv) have such other powers and perform such other duties as the Board or these Bylaws may specify.  If required by the Board, the chief financial officer shall, at the expense of the Company, give the Company a bond in the amount and with the surety or sureties specified by the Board for faithful performance of the duties of his office and for restoration to the Company of all of its books, papers, money and other property of every kind in the possession or under the control of the chief financial officer on his death, resignation, retirement or removal from office.

8.   Conflict of Interest Policy.  The Company, and each of the Company's directors, principal officers and members of committees with governing board delegated powers, shall abide by the Conflict of Interest Policy attached hereto as Appendix A.

Exhibit 1
Page 24

9.  Indemnification.

a.  To the fullest extent permitted by law, the Company shall indemnify its directors and officers, including persons formerly occupying any such positions, against all expenses, judgments, fines, settlements and other amounts actually and reasonably incurred by any of them in connection with any "proceeding", as such term is used in Corporations Code Section 5238, including an action by or in the right of the Company, by reason of the fact that the person is or was a person described in that Section. The term "expenses" as used in this Section 9(a) shall have the same meaning as specified in Corporations Code Section 5238(a). Upon written request to the Board by any person seeking indemnification under Corporations Code Section 5238(b) or Section 5238(c), the Board shall promptly decide under Corporations Code Section 5238(e) whether the applicable standard of conduct set forth in Corporations Code Section 5238(b) or Section 5238(c) has been met and, if so, the Board shall authorize indemnification. Expenses incurred by a person seeking indemnification under this Section 9(a) in defending any proceeding covered by this Section 9(a) shall be advanced by the Company before final disposition of the proceeding, on receipt by the Company of an undertaking by or on behalf of that person that the advance will be repaid unless it is ultimately found that the person is entitled to be indemnified by the Company for those expenses.

b.  To the fullest extent permitted by law, the Company may indemnify its employees and other persons described in Corporations Code Section 5238(a), including persons formerly occupying any such positions, against all expenses, judgments, fines, settlements and other amounts actually and reasonably incurred by any of them in connection with any "proceeding", as such term is used in Corporations Code Section 5238, including an action by or in the right of the Company, by reason of the fact that the person is or was a person described in that Section. The term "expenses" as used in this Section 9(b) shall have the same meaning as specified in Corporations Code Section 5238(a). Upon written request to the Board by any person seeking indemnification under Corporations Code Section 5238(b) or Section 5238(c), the Board may promptly decide under Corporations Code Section 5238(e) whether the applicable standard of conduct set forth in Corporations Code Section 5238(b) or Section 5238(c) has been met and, if so, the Board may authorize indemnification. Expenses incurred by a person seeking indemnification under this Section 9(b) in defending any proceeding covered by this Section 9(b) may be advanced by the Company before final disposition of the proceeding, on receipt by the Company of an undertaking by or on behalf of that person that the advance will be repaid unless it is ultimately found that the person is entitled to be indemnified by the Company for those expenses.

10.  Insurance.  The Company shall have the right, and shall use commercially reasonable efforts, to purchase and maintain insurance to the full extent permitted by law, and in such amounts as the Board deems reasonable under the circumstances, on behalf of its officers, directors, employees and other agents, to cover any liability asserted against or incurred by any officer, director, employee or agent in such capacity or arising from the officer's, director's, employee's or agent's status as such.

11.  Limitation of Liability.  The liability of the directors of the Company for monetary and other damages shall be eliminated to the fullest extent permissible under the California Nonprofit Public Benefit Corporation Law.

23225462.DOC

8

Exhibit 1
Page 25

12. <u>Maintenance and Inspection of Corporate Records</u>. The Company shall keep adequate and correct books and records of account and written minutes of the proceedings of its Board and committees of the Board. The Company shall keep at its principal California office the original or a copy of the articles of incorporation and Bylaws, as amended to the current date. Every director shall have the absolute right at any reasonable time to inspect the Company's books, records, documents of every kind, physical properties and the records of each subsidiary of the Company. The inspection may be made in person or by the director's authorized agent or attorney. The right of inspection includes the right to copy and make extracts of documents.

13. <u>Required Reports</u>.

a.   The chief financial officer shall cause an annual report to be sent to the Board within one hundred twenty (120) days after the end of the Company's fiscal year. The annual report shall contain the following information in appropriate detail:

i.   the assets and liabilities, including trust funds, of the Company as of the end of the fiscal year;

ii.   the principal changes in assets and liabilities, including trust funds, of the Company, during the fiscal year;

iii.   the revenue or receipts of the Company, both unrestricted and restricted to particular purposes, during the fiscal year; and

iv.   the expenses and disbursements of the Company for both general and restricted purposes, during the fiscal year.

b.   The report required by Section 12(a) herein shall be accompanied by any report of independent accountants or, if there is no such report, a certificate of an authorized officer of the Company certifying that such statements were prepared without audit from the Company's books and records.

c.   As part of the annual report, or as a separate document if no annual report is issued, the Company shall, within one hundred twenty (120) days after the end of the Company's fiscal year, annually prepare and furnish to each director a statement of any transaction occurring during the fiscal year (i) in which the Company, its parent or any of its subsidiaries was a party, (ii) in which an officer or director of the Company had a direct or indirect material financial interest, and (iii) that involved, or was one (1) of several transactions with the same officer or director of the Company involving in the aggregate, more than $10,000. The statement shall include a brief description of the transaction or transactions, the names of the officers or directors of the Company involved (stating their relationship to the Company, the nature of their interest in the transaction and, where practicable, the amount of that interest, <u>provided</u> that if the transaction was with a partnership in which the interested person is a partner, only the interest of the partnership need be stated). No person shall be considered as having a material financial interest solely by reason of a common directorship. As part of the annual report, or as a separate document if no annual report is issued, the Company shall, within one hundred twenty (120) days after the end of the Company's fiscal year, annually prepare and furnish to each director a statement of any indemnifications or advances for potentially indemnified expenses aggregating

Exhibit 1
Page 26

more than $10,000 paid during the fiscal year to any officer or director of the Company under Section 9 of these Bylaws.

d.   Independent Audit of Annual Financial Statements.  In compliance with California Government Code Section 12586(e)(1), a charitable organization with gross revenues of $2,000,000 or more (excluding grants received from governmental entities, if an accounting is available of how Company used the grant funds) must prepare annual financial statements audited by an independent CPA.  As such, if the Company's gross revenues reach $2,000,000 or more, the Board (or the audit committee if there is one, or which shall have been formed as required by applicable law, at the direction of the Board) shall perform all tasks necessary to comply with California Government Code Section 12586(e)(1), including, but not limited to, the following: (a) prepare annual financial statements audited by an independent CPA, (b) such financial statements must use generally accepted accounting practices and the independent CPA must follow generally accepted auditing standards, (c) if the accounting firm and CPA performing the audit also provide non-audit services to the non-profit, the accounting firm and CPA must follow the independence standards in the Yellow Book issued by the U.S. Comptroller General, and (d) the audited financial statements must be made available for inspection by the Attorney General and the public no later than nine (9) months after the close of the fiscal year covered by the financial statement.

14.   Advisory Board.  The Board may, in its discretion, establish advisory boards for the Company, with such membership as the Board may from time to time determine to be appropriate.  The Board may, in its discretion, and from time to time appoint and remove members of the advisory board.  No member of any such advisory board shall, solely by reason of such membership, be a director of the Company, and membership in any such advisory board shall not (a) otherwise create any legal relationship between the member and the Company, (b) create any legal obligations on the part of the member toward the Company, or (c) create any legal obligations on the part of the Company to the member.

15.   Fiscal Year.  The fiscal year of the Company shall be the calendar year unless otherwise determined by a resolution adopted by the Board.

16.   Amendments to These Bylaws.  These Bylaws may be adopted, amended or repealed by the vote of the Board pursuant to the provisions of Section 6(m) herein.

## CERTIFICATE

We, Marc Cohen and Jay Grodin, Chairman and Secretary, respectively, of LAFD Foundation, Inc., a California Nonprofit Public Benefit Corporation (the "Company"), DO HEREBY CERTIFY that the foregoing is a true and correct copy of the Company's Bylaws as adopted by the Board of Directors of the Company as of June 12, 2008.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed the corporate seal of the Company as of the 12th day of June, 2008.

_____
Marc Cohen, Chairman

_____
Jay Grodin, Secretary

[Corporate Seal]

23225462.DOC

Exhibit 1
Page 28

FROM :                          FAX NO. :                    Jun. 13 2008 12:40PM  P2

## CERTIFICATE

We, Marc Cohen and Jay Grodin, Chairman and Secretary, respectively, of LAFD Foundation, Inc., a California Nonprofit Public Benefit Corporation (the "Company"), DO HEREBY CERTIFY that the foregoing is a true and correct copy of the Company's Bylaws as adopted by the Board of Directors of the Company as of June 12, 2008.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed the corporate seal of the Company as of the 12th day of June, 2008.

Marc Cohen, Chairman

Jay Grodin, Secretary

[Corporate Seal]

23225462.1XXX

Exhibit 1
Page 29

## Appendix A

### Conflict of Interest Policy of LAFD Foundation, Inc., (the "Company")

#### Article I.
#### Purpose

The purpose of the conflict of interest policy is to protect the Company's interest when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer or director of the Company or might result in a possible excess benefit transaction.[1] This policy is intended to supplement but not replace any applicable state and federal laws governing conflict of interest applicable to nonprofit and charitable organizations.

#### Article II.
#### Definitions

**1.   Interested Person**

Any director, the president, the secretary, the treasurer, any vice president, or any member of a committee with governing board delegated powers, who has a direct or indirect financial interest, as defined below, is an interested person.

**2.   Financial Interest**

A person has a financial interest if the person has, directly or indirectly, through business, investment, or family:

       a.     An ownership or investment interest in any entity with which the Company has a transaction or arrangement,

       b.     A compensation arrangement with the Company or with any entity or individual with which the Company has a transaction or arrangement, or

       c.     A potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Company is negotiating a transaction or arrangement.

Compensation includes direct and indirect remuneration as well as gifts or favors that are not insubstantial.

---

[1] An "excess benefit transaction" is a transaction in which an economic benefit is provided by an applicable tax-exempt organization, directly or indirectly, to or for the use of a disqualified person if the value of the economic benefit provided by the organization exceeds the value of the consideration (including the performance of services) received by the organization for providing such benefit.

Exhibit 1
Page 30

A financial interest is not necessarily a conflict of interest. Under Article III, Section 2, a person who has a financial interest may have a conflict of interest only if the appropriate governing board or committee decides that a conflict of interest exists.

## Article III.
### Procedures

1.   **Duty to Disclose**

In connection with any actual or possible conflict of interest, an interested person or potential interested person must disclose the existence of the financial interest and be given the opportunity to disclose all material facts to the directors and members of committees with governing board delegated powers considering the proposed transaction or arrangement.

2.   **Determining Whether a Conflict of Interest Exists**

After disclosure of the financial interest and all material facts, and after any discussion with the interested person or potential interested person, he/she shall leave the governing board or committee meeting while the determination of a conflict of interest is discussed and voted upon. The remaining board or committee members shall decide if a conflict of interest exists.

3.   **Procedures for Addressing the Conflict of Interest**

   a.   An interested person may make a presentation at the governing board or committee meeting, but after the presentation, he/she shall leave the meeting during the discussion of, and the vote on, the transaction or arrangement involving the possible conflict of interest.

   b.   The chairperson of the governing board or committee shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.

   c.   After exercising due diligence, the governing board or committee shall determine whether the Company can obtain with reasonable efforts a more advantageous transaction or arrangement from a person or entity that would not give rise to a conflict of interest.

   d.   If a more advantageous transaction or arrangement is not reasonably possible under circumstances not producing a conflict of interest, the governing board or committee shall determine by a majority vote of the non-interested directors whether the transaction or arrangement is in the Company's best interest, for its own benefit, and whether it is fair and reasonable. In conformity with the above determination it shall make its decision as to whether to enter into the transaction or arrangement.

4.   **Violations of the Conflict of Interest Policy**

   a.   If the governing board or committee has reasonable cause to believe a member has failed to disclose actual or possible conflicts of interest, it shall inform the member of the

Exhibit 1
Page 31

basis for such belief and afford the member an opportunity to explain the alleged failure to disclose.

b.    If, after hearing the member's response and after making further investigation as warranted by the circumstances, the governing board or committee determines the member has failed to disclose an actual or possible conflict of interest, it shall take appropriate disciplinary and corrective action.

## Article IV.
### Records of Proceedings

The minutes of the governing board and all committees with board delegated powers shall contain:

1.    The names of the persons who disclosed or otherwise were found to have a financial interest in connection with an actual or possible conflict of interest, the nature of the financial interest, any action taken to determine whether a conflict of interest was present, and the governing board's or committee's decision as to whether a conflict of interest in fact existed.

2.    The names of the persons who were present for discussions and votes relating to the transaction or arrangement, the content of the discussion, including any alternatives to the proposed transaction or arrangement, and a record of any votes taken in connection with the proceedings.

## Article V.
### Compensation

1.    A voting member of the governing board who receives compensation, directly or indirectly, from the Company for services is precluded from voting on matters pertaining to that member's compensation.

2.    A voting member of any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Company for services is precluded from voting on matters pertaining to that member's compensation.

3.    No voting member of the governing board or any committee whose jurisdiction includes compensation matters and who receives compensation, directly or indirectly, from the Company, either individually or collectively, is prohibited from providing information to any committee regarding compensation.

## Article VI.
### Periodic Reviews

To ensure the Company operates in a manner consistent with charitable purposes and does not engage in activities that could jeopardize its tax-exempt status, periodic reviews shall be conducted. The periodic reviews shall, at a minimum, include the following subjects:

23225462.DOC

3

Exhibit 1
Page 32

1.      Whether compensation arrangements and benefits are reasonable, based on competent survey information, and the result of arm's-length bargaining.

2.      Whether partnerships, joint ventures, and arrangements with management organizations conform to the Company's written policies, are properly recorded, reflect reasonable investment or payments for goods and services, further charitable purposes and do not result in inurement, impermissible private benefit or in an excess benefit transaction.

### Article VII.
### Use of Outside Experts

When conducting the periodic reviews as provided for in Article VI, or determining whether a conflict of interest exists as provided for in Article III, the Company may, but need not, use outside advisors. If outside experts are used, their use shall not relieve the governing board of its responsibility for ensuring periodic reviews are conducted.

Exhibit 1
Page 33

# EXHIBIT 2

ORIGINAL

## TRADEMARK LICENSE AGREEMENT

THIS AGREEMENT is entered into and made effective as of March 11, 2009, by and between the City of Los Angeles, a municipal corporation duly organized and existing under the laws of California, having an address at City Hall East, Room 607, 200 North Main Street, Los Angeles, California 90012 ("LICENSOR" or "CITY"), and LAFD Foundation, Inc., a nonprofit public benefit corporation duly organized and existing under the laws of the State of California, having an address at 201 N. Rossmore Avenue, Los Angeles, California 90004 ("LICENSEE").

### WITNESSETH:

WHEREAS, LICENSOR and LICENSEE have previously entered into a Memorandum of Agreement ("MOA") whereby LICENSOR authorizes LICENSEE to be an authorized entity to raise funds and charitable donations on the behalf of and for the benefit of the Los Angeles Fire Department ("LAFD"); and

WHEREAS, LICENSOR is the sole and exclusive owner of the rights to use the LAFD Marks and other intellectual property of the LAFD (collectively, the "MARKS") identified on Schedule "A," attached hereto and made a part hereof, in connection with LAFD services and related goods, in the United States and worldwide, and has established substantial goodwill and reputation in the MARKS and other intellectual property through such use; and

WHEREAS, LICENSOR has the power and authority to grant to LICENSEE the right, privilege, and license to use the MARKS on or in association with fund raising activities and projects for the LAFD and all incidental goods and services of the LICENSEE in support thereof, as authorized by the MOA and the February 25, 2008 Articles of Incorporation of the LICENSEE (the "Projects") and any solicitation materials including but not limited to photographs, videos, clothing or other items associated therewith (collectively "Licensed Materials"); and

*1*

Exhibit 2
Page 34

WHEREAS, LICENSEE desires to obtain from LICENSOR a non-exclusive, worldwide license to use the MARKS, including in or in association with the Licensed Materials; and

WHEREAS, LICENSEE wishes to use and LICENSOR wishes to license the MARKS for use in ways that do not demean, disparage, disgrace, or cast in an unfavorable light, the CITY or any of its employees or departments; and in ways that are consistent with the terms and conditions of the MOA and this Agreement; and

WHEREAS, both LICENSEE and LICENSOR are in agreement with respect to the terms and conditions on which LICENSEE shall use the MARKS.

NOW, THEREFORE, in consideration of the foregoing as well as the promises and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties, each intending to be legally bound hereby, do promise and agree as follows:

1.    LICENSE

LICENSOR hereby grants to LICENSEE for the Term of License Agreement (this "Agreement") as recited herein a non-exclusive, non-transferable, worldwide right and license to use the MARKS contained in Schedule "A," including on or in association with the Licensed Materials throughout the world (the "Territory") and in all media, now known or hereafter developed. It is understood and agreed that this license shall pertain only to the MARKS and the Licensed Materials and does not extend to any other mark, product, or service. Said license authorizes LICENSEE and its manufacturers to produce items and goods bearing the MARKS as authorized by this Agreement. In the avoidance of doubt, the license grant herein does not confer on LICENSEE, any rights to sublicense or to make derivative marks based on the MARKS or any designs therein. Further, this Agreement grants only incidental use of the MARKS in the Licensed Materials.

2

*aw*

Exhibit 2
Page 35

2.     **TERM OF THE AGREEMENT**

This Agreement and the provisions hereof except as otherwise provided, shall be in full force and effect commencing on the date of execution by both parties for three (3) years, so long as the MOA, including any amendments, modifications or extensions thereof, is in effect (the "Term").

3.     **COMPENSATION**

A.     Use in Licensed Materials. In consideration for the license granted hereunder for use of the MARKS, worldwide, in all media, in connection with the Licensed Materials, LICENSEE agrees to provide LICENSOR with other good and valuable consideration including good faith promise to fund-raise for the LAFD, the receipt of which is hereby acknowledged by LICENSOR.

B.     Non-Licensed Use. Other than use in Licensed Materials, LICENSEE shall not, without a separate written agreement with LICENSOR, use the MARKS in connection with any tangible goods or services.

4.     **NOTICES AND QUALITY CONTROL**

A.     Trademark Notice. The License granted hereunder is conditioned upon LICENSEE'S compliance with the marking provisions of the trademark laws of the United States, as follows. Where applicable, each copy of the Licensed Materials shall include the following trademark notice: "All Los Angeles Fire Department™ marks, insignias and badges are trademarks of the City of Los Angeles. Use permitted."

B.     Quality Control Requirements. The Licensed Materials shall not demean, disparage, disgrace, or cast in an unfavorable light, the City or any of its employees or departments, and shall be of a high quality. The Licensed Materials shall not be used in connection with the depiction of a violation of LAFD policy/procedure or any unlawful,

3

Exhibit 2
Page 36

immoral, racist, or reckless act performed by the City of Los Angeles or any of its employees or departments. LICENSOR, via the Chief's Office of the LAFD, shall have the right, as it may request in writing, to review, approve, and reject, consistent with the prior two (2) sentences of this Paragraph 4B as determined by the Chief in his/her sole discretion, all Licensed Materials at least thirty (30) days before the Licensed Materials are manufactured, distributed, displayed, or placed in the stream of commerce in any manner, provided said approval shall not be unreasonably withheld. Any Licensed Material so rejected in writing by LICENSOR shall not be manufactured, distributed, displayed, or placed in the stream of commerce in any manner.

5.    **INTELLECTUAL PROPERTY RIGHTS**

A.    LICENSEE acknowledges LICENSOR's exclusive rights in the MARKS and, further, acknowledges that the MARKS are unique and original to LICENSOR and that LICENSOR is the owner thereof. LICENSEE shall not, at any time during or after the effective Term of the Agreement, dispute or contest, directly or indirectly, LICENSOR's exclusive right and title to the MARKS or the validity thereof.

B.    LICENSEE acknowledges that the MARKS have acquired secondary meaning.

C.    LICENSEE agrees that its use of the MARKS inures to the benefit of LICENSOR and that LICENSEE shall not acquire any rights in the MARKS other than those contained herein as a result of this license.

D.    LICENSEE acknowledges that any rights not expressly granted herein remain solely with LICENSOR, including without limitation, the right to register, or to renew the registrations for, the MARKS in the Territory, and the right to use, and to authorize others to use, the MARKS in connection with any other products or services in the Territory.

4

Exhibit 2
Page 37

E.     LICENSEE shall not do anything that is inconsistent with or harmful to LICENSOR's ownership of any rights to the MARKS or the goodwill associated with the MARKS, whether in the Territory or elsewhere, without written consent of the City.  Consistent with the immediately preceding sentence, LICENSEE shall, including without limitation:

(1)     Not use the MARKS in connection with any products or services other than the Licensed Materials;

(2)     Not use any marks confusingly similar to the MARKS in connection with any products or services;

(3)     Not register or attempt to register the MARKS or any marks confusingly similar to them; and

(4)     Not challenge or dispute LICENSOR's ownership of and rights to the MARKS and the validity of any of LICENSOR's registrations or applications for the MARKS.

LICENSEE'S duty under this Paragraph 5 entitled INTELLECTUAL PROPERTY RIGHTS shall survive the expiration or any termination of this Agreement.

6.     TERMINATION

Consistent with the terms of the MOA, either party may terminate this Agreement on thirty (30) days written notice to the other party in the event of an uncured material breach of any material provisions of this Agreement by the other party, provided that, during the thirty-day period, the breaching party fails to cure such material breach.

7.     POST TERMINATION RIGHTS

Upon the expiration or termination of this Agreement, all rights granted to LICENSEE under this Agreement shall forthwith terminate and immediately revert to LICENSOR and LICENSEE shall discontinue all use of the MARKS.  All materials bearing the MARKS shall be

5



Exhibit 2
Page 38

accounted for and submitted to the LAFD Chief's Office within thirty (30) calendar days from the termination date. The LICENSEE shall be permitted to use, consistent with this Agreement (other than the Term), its then-already manufactured (as of the termination date) inventory of products bearing the MARKS in a reasonably practicable manner after reaching a mutual understanding with the LAFD Chief Officer regarding such phase-out period and conditions.

8.    INDEMNITY AND INSURANCE

A.    LICENSOR shall indemnify, hold harmless, and defend LICENSEE and its officers, directors, employees, agents and representatives against any trademark infringement losses, claims, damages, suits, costs, expenses (including reasonable attorneys' and experts' fees) and other liabilities arising solely out of LICENSEE'S use of the MARKS under the terms of this Agreement; provided, however, that LICENSEE shall notify LICENSOR in writing within ten (10) calendar days, if reasonably practicable, after LICENSEE receives written notification of any claim or suit (including but not limited to any cease-and-desist letter, request, demand or notice, etc.) relating to the MARKS. LICENSOR shall undertake and control the defense and settlement of any such claim or suit in a manner consistent with the Los Angeles City Charter Sections 272 et seq. (as of the last party signature date herein) and LICENSEE shall reasonably cooperate fully with LICENSOR in connection herewith. In no event shall LICENSOR be liable for total damages, costs and fees exceeding the total value of all monetary donations actually received by the LAFD from LICENSEE during the preceding one (1) calendar year from the earliest date on which LICENSEE is notified of any alleged infringement; nor be liable for any consequential damages or loss of revenue that LICENSEE may suffer arising out of same. In lieu of any other remedies the law might or might not afford the LICENSEE in such trademark infringement situations, the foregoing indemnification and duty to defend constitute the sole and exclusive remedies LICENSEE and its successors-in-interest are entitled to receive.—Further, the

6

Exhibit 2
Page 39

foregoing indemnity shall be limited to the extent LICENSEE is obligated to indemnify LICENSOR under Paragraph 8-B below.

B.     Except for City's gross negligence or willful misconduct and except as contemplated by Paragraph 8A above, LICENSEE shall indemnify, hold harmless and defend the LAFD and the CITY, and each of their officers, commissioners, employees, agents and representatives, against any losses, claims, damages, suits, costs, expenses (including reasonable attorneys' and experts' fees) or other liabilities arising out of the design, manufacture, packaging, distribution, shipment, advertising, promotion, sale, or exploitation of LICENSEE'S products bearing the MARKS or in connection with the use of the MARKS under the terms of this Agreement; provided, however, that LICENSOR shall notify LICENSEE in writing within ten (10) calendar days, if reasonably practicable, after LICENSOR receives written notification of any claim or suit (including but not limited to any cease-and-desist letter, request, demand, or notice, etc.) relating to the Marks. LICENSEE shall undertake and control the defense and settlement of any such claim or suit in a manner consistent with the Los Angeles City Charter Sections 272 et seq. (as of the last party signature date herein), a copy of which was previously provided to LICENSEE in writing, LICENSEE hereby acknowledged. Further, LICENSOR shall reasonably cooperate fully with LICENSEE in connection with defense and settlement of such claim or suit. Subject to Los Angeles City Charter Sections 272 et seq. (as of the last party signature date herein), LICENSEE, with advance notice to LICENSOR of a pending settlement, shall have the right to settle any claim so long as such settlement in no way interferes with any of LICENSOR's rights with respect to the MARKS. In lieu of any other remedies the law might or might not afford the LICENSOR, the foregoing indemnification and duty to defend constitute the sole and exclusive remedies LICENSOR and its successors-in-interest are entitled to receive.

Exhibit 2
Page 40

C.      LICENSEE shall at all times while this Agreement is in effect and for three (3) years thereafter, obtain and maintain at its own expense, from a qualified insurance carrier with a Best rating of "A" general liability insurance including, without limitation, coverage for personal and advertising injury, which includes LICENSOR as an additional insured, along with its officers, commissioners, employees, agents and representatives. The amount of coverage shall be not less than Two Million dollars ($2,000,000 USD), combined single limit (with no deductible amount) for each single occurrence and in the aggregate. The policy shall provide for thirty (30) days written notice [ten (10) days for non-payment of premium] to LICENSOR from the insurer by receipted mail, in the event of any modification, cancellation or termination. Upon execution of this Agreement, LICENSEE shall furnish LICENSOR (attention to its City Risk Manager) with an insurance industry certificate of insurance or a certified copy of the full insurance policy evidencing the same. [To see a complete list of insurance compliance instructions, please see "instructions for City insurance requirements" attached as Schedule B] In no event shall LICENSEE manufacture, advertise, distribute or sell any products bearing the MARKS prior to LICENSOR'S receipt of such proof of insurance.

9.      NOTICES

A.      Any notice required to be given pursuant to this Agreement shall be in writing and (a) mailed by certified or registered mail, return receipt requested, (b) delivered by a national overnight express service, (c) hand delivered or (d) sent by facsimile and followed by U.S. mail, in each case to the address or facsimile number and to the attention of the party (by name or title) set forth below (or to such other address and to the attention of such other party as designated by written notice to the other party):

8

Exhibit 2
Page 41

Mar 11 2009 6:26PM    HP LASERJET FAX                                          page 10

LICENSOR:

Philip H. Lam
Intellectual Property Counsel
Los Angeles City Attorney's Office
City Hall East, Suite 700
200 North Main Street
Los Angeles, CA 90012
Fax: 213-978-8211

CC:

Janet Jackson
General Counsel, LAFD
Los Angeles City Attorney's Office
City Hall East, Suite 800
200 North Main Street
Los Angeles, CA 90012
Fax: 213-978-8787

Chief
Los Angeles Fire Department
City Hall East, Suite 1800
200 North Main Street
Los Angeles, CA 90012
Fax: 213-978-3815

LICENSEE:

LAFD Foundation, Inc.
201 N. Rossmore Avenue
Los Angeles, CA 90004
Attention: Marc Cohen
Fax: 323-933-8164

CC:

Kaye Scholer LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Attention: Russ Cashdan
Fax: 310-229-1868

The date of giving of any such notice, consent, waiver or other communication shall be (i) the date of delivery if hand delivered, (ii) the date of receipt for certified or registered mail, (iii) the day after delivery to the overnight courier service if sent thereby, and (iv) the date of telephone facsimile transmission on production of a transmission report by the machine from which the facsimile was sent that indicates that the facsimile was sent in its entirety to the facsimile number of the recipient.

9

Exhibit 2
Page 42

10.    JURISDICTION AND DISPUTES

A.    This Agreement shall be governed by and construed in accordance with the laws of the State of California and the U.S. laws that pre-empt the applicable California State Laws, without regard to any conflict-of-law principles.

B.    All disputes under this Agreement shall be resolved by the courts of the State of California, including the U.S. District Court for the Central District of California, seated in the County of Los Angeles, and the parties all consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

11.    AGREEMENT BINDING ON SUCCESSORS

The provisions of the Agreement shall be binding on and shall inure to the benefit of the parties hereto, and their heirs, administrators, successors, and assigns.

12.    WAIVER

No waiver by either party of any default shall be deemed as a waiver of prior or subsequent default of the same or other provisions of this Agreement.

13.    SEVERABILITY

If any term, clause, or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause, or provision and such invalid term, clause, or provision shall be deemed to be severed from the Agreement.

14.    ASSIGNABILITY

LICENSEE may not assign any of its rights including the license granted herein, nor delegate any of its obligations under this Agreement, without the prior written consent of CITY via the Chief of the LAFD.  Notwithstanding the foregoing, any change in the name, principal

10



Exhibit 2
Page 43

address and/or form of corporation of the LICENSEE shall not constitute or be construed as an assignment by LICENSEE of this Agreement, provided LICENSEE update the records of the City with such change in a timely manner.

15.    RELATIONSHIP OF PARTIES

LICENSEE acknowledges that it is not an agent or representative of LICENSOR and has no authority to assume or create any obligation on behalf of or in the name of, or binding upon, LICENSOR, or to represent LICENSOR in any manner not specifically provided herein except as stipulated to in the MOA.

16.    INTEGRATION

This Agreement, along with the MOA, constitutes the entire understanding of the parties with respect to the subject matter hereof, and revokes and supersedes all prior agreements between the parties.  It shall not be modified or amended except in writing signed by the parties hereto and specifically referring to this Agreement.

17.    SURVIVABILITY

The following paragraphs shall survive termination, expiration and cancellation of this Agreement: Paragraphs 3, 4, 5, 7, 8, 10, 11, 12, 14, 15 and 17.

18.    PRIORITY OF AGREEMENTS

Insofar as intellectual property rights (including trademark and copyright, if any) and License grant arising out of or related to the MARKS, this Agreement shall govern over the MOA or any other documents incorporated by reference hereto (this Agreement) or thereto (the MOA).  As to all other non-intellectual property rights, issues or matters, the MOA shall take precedence over this Agreement.

[Signature page to follow.]

11



Exhibit 2
Page 44

Mar 11 2009 6:27PM    HP LASERJET FAX                              page 13

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

LICENSOR:                                    LICENSEE:

City of Los Angeles Los Angeles Fire         LAFD Foundation, Inc.
Department

By:_____                 By: _____
Title: Douglas L. Barry, Fire Chief          Title: Marc Cohen, Chairman
Date:_____                 Date: _____

                                             By: _____
                                             Title: Jay Grodin, Secretary
                                             Date: __03.11.09__

Approved:
_____ 2008
ROCKARD J. DELGADILLO, City Attorney

By:_____
PHILIP H. Lam
Intellectual Property Counsel

Attested to:
KAREN E. KALFAYAN, City Clerk

By:_____ Dated:_____

Title _____

12

Exhibit 2
Page 45

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

LICENSOR:

City of Los Angeles Los Angeles Fire Department

By:_____
Title: Douglas L. Barry, Fire Chief
Date:_____

LICENSEE:

LAFD Foundation, Inc.

By:_____
Title: Marc Cohen, Chairman
Date: 3/11/09

By: _____
Title: Jay Grodin, Secretary
Date:_____

Approved:

_____, 2008
ROCKARD J. DELGADILLO, City Attorney

By: _____
PHILIP H. Lam
Intellectual Property Counsel

Attested to:
KAREN E. KALFAYAN, City Clerk

By:_____ Dated: _____

Title _____

12

Exhibit 2
Page 46

## SCHEDULE A
## TO
## TRADEMARK LICENSE AGREEMENT
## BETWEEN
## CITY OF LOS ANGELES
## AND
## LOS ANGELES FIRE DEPARTMENT FOUNDATION, INC.

MARKS Licensed:

The following MARKS form part of this Agreement:

1.  The Los Angeles Fire Department Badge.
2.  The Los Angeles Fire Department Uniform.
3.  The Letters "LAFD", including all logos.
4.  Any other mark, design, motto, logo, and insignia that are readily identifiable with and/or associated with the Los Angeles Fire Department, and as modified from time to time.

13

Exhibit 2
Page 47

**SCHEDULE B**
**TO**
**TRADEMARK LICENSE AGREEMENT**
**BETWEEN**
**CITY OF LOS ANGELES**
**AND**
**LOS ANGELES FIRE DEPARTMENT FOUNDATION, INC.**

Instructions to Comply with City's Insurance Requirements:

**CITY OF LOS ANGELES**
**INSTRUCTIONS AND INFORMATION**
**ON COMPLYING WITH CITY INSURANCE REQUIREMENTS**
(Share this information with your insurance agent or broker.)

1.      **Agreement/Reference.** All evidence of insurance must identify the nature of your business with the CITY. Clearly show any assigned number of a bid, contract, lease, permit, etc. or give the project name and the job site or street address to ensure that your submission will be properly credited. Provide the types of coverage and minimum dollar amounts specified on the Required Insurance and Minimum Limits sheet (Form Gen. 146) included in your CITY documents.

2.      **When to Submit.** Normally, no work may begin until an Office of the City Administrative Officer, Risk Management insurance approval number has been obtained, so documents should be submitted as early as practicable. For As-needed Contracts, insurance should be submitted until a specific job has been awarded. Design Professionals coverage for new construction work may be submitted simultaneously with final plans and drawings, but before construction commences.

3.      **Acceptable Evidence and Approval.** An Insurance Industry Certificate of Insurance (such as an ACORD Certificate) containing a thirty (30) days' cancellation notice provision (ten (10) days for non-payment of premium) AND an Additional Insured Endorsement naming the CITY an additional insured completed by your insurance company or its designee is the preferred form of evidence of insurance. If policy includes an automatic or blanket additional insured endorsement, the ACORD certificate must state the City is covered by this endorsement. An endorsement naming the CITY an Additional Named Insured and Loss Payee as its interests May Appear is required on property policies. All evidence of insurance must be authorized by a person with authority to bind coverage, whether that is the authorized agent/broker or insurance underwriter.
Acceptable Alternatives to Insurance Industry Certificates of Insurance:

• A copy of the full insurance policy which contains a thirty (30) days' cancellation notice provision (ten (10) days for non-payment of premium) and additional insured and/or loss-payee status, when appropriate, for the CITY.

• Binders and Cover Notes are also acceptable as interim evidence for up to 90 days from date of approval.

*14*

*N*

Exhibit 2
Page 48

Additional Insured Endorsements DO NOT apply to the following:

- Indication of compliance with statute, such as Workers' Compensation Law or the California Financial Responsibility Law for Automobile Liability.

- Professional Liability Insurance.

Completed Insurance Industry Certificates of Insurance can be sent electronically (CAO.insurance.bonds@lacity.org) or faxed to the Office of the City Administrative Officer, Risk Management ((213) 978-7615 or (213) 978-7616). Electronic submission is the preferred method of submitting your documents. Verification of approved insurance and bonds may be obtained by checking the Office of the City Administrative Officer, Risk Management, Insurance & Bonds Compliance System at http://www.lacity.org/cao/risk/index.htm.

4.     Renewal. When an existing policy is renewed, submit an Insurance Industry Certificate of Insurance or a renewal endorsement. If your policy number changes, you must submit a new Additional Insured Endorsement.

5.     Alternative Programs/Self-Insurance.   Risk financing mechanisms such as Risk Retention Groups, Risk Purchasing Groups, off-shore carriers, captive insurance programs and self-insurance programs are subject to separate approval after the CITY has reviewed the relevant audited financial statements. To initiate a review for approval of your program, you should complete and submit the Applicant's Declaration of Self Insurance form (http://www.lacity.org/cao/risk/InsuranceForms.htm) to the Office of the City Administrative Officer, Risk Management for consideration.

6.     General Liability insurance covering your operations (and products, where applicable) is required whenever the CITY is at risk of third-party claims which may arise out of your work or your presence or special event on CITY premises. Sexual Misconduct coverage is a required coverage when the work performed involves minors. Fire Legal Liability is required for persons occupying a portion of CITY premises. (Information on two City insurance programs, the SPARTA program, an optional source of low-cost insurance which meets most minimum requirements, and PROMPT COVER, which provides liability coverage for short-term special events on CITY premises or streets, is available at http://www.2sparta.com, or by calling (800) 420-0555.)

7.     Automobile Liability insurance is required only when vehicles are used in performing the work of your Contract or when they are driven off-road on CITY premises; it is not required for simple commuting unless CITY is paying mileage. However, compliance with California law requiring auto liability insurance is a contractual requirement.

8.     Errors and Omissions coverage will be specified on a project-by-project basis if you are working as a licensed or other professional. The length of the claims discovery period required will vary with the circumstances of the individual job.

9.     Workers' Compensation and Employer's Liability insurance are not required for single-person contractors. However, under state law these coverages (or a copy of the state's Consent To Self Insure) must be provided if you have any employees at any time during the period of this contract. Contractors with no employees must complete a Request for Waiver of Workers' Compensation Insurance Requirement form from http://www.lacity.org/cao/risk. A Waiver of Subrogation on the coverage is required only for jobs where your employees are working on CITY premises under hazardous conditions, e.g., uneven terrain, scaffolding, caustic

15

Exhibit 2
Page 49

chemicals, toxic materials, power tools, etc. The Waiver of Subrogation waives the insurer's right to recover (from the CITY) any workers' compensation paid to an injured employee of CONTRACTOR/CONSULTANT.

10.    Property Insurance is required for persons having exclusive use of premises or equipment owned or controlled by the CITY. Builder's Risk/Course of Construction is required during construction projects and should include building materials in transit and stored at the project site.

11.    Surety coverage may be required to guarantee performance of work. A Crime Policy may be required to handle CITY funds or securities, and under certain other conditions. Specialty coverages may be needed for certain operations. For assistance in obtaining the CITY-required bid, payment and performance surety bonds, please see the Bond Assistance Program Los Angeles at http://www.imwis.com/citylosangeles.htm or call (213) 327-0298 for more information.

16

Exhibit 2
Page 50

# EXHIBIT 3

## *PLEASE SAVE THE DATE*

**The LAFD FOUNDATION, INC.**

cordially invites you to

# "On Fire!"

First Ever Founding Reception

& Champagne Brunch

And the opportunity to join us as

**"Friends of the Fire Department and Fire Service"**

**Saturday, October 22, 2011 11:00 a.m.**

The Gilmore Adobe at The Original Farmers Market

6301 West Third Street

Los Angeles, CA 90036

(Parking available adjacent at The Grove structure)

Co-hosted by A.F. Gilmore Company, The Original Farmers Market,
Miracle Mile Civic Coalition

*Invitation to follow – please look for a big red envelope in your mail!*

Exhibit 3
Page 51

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CITY OF LOS ANGELES, a municipal corporation, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV11-08596** -GW(SSx) |
| v. | |
| LAFD FOUNDATION, INC., a California non-profit public benefit corporation, | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): <u>LAFD FOUNDATION, INC.</u>

A lawsuit has been filed against you.

Within <u>21</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Brian K. Brookey</u>, whose address is <u>Christie, Parker & Hale, LLP, 350 W. Colorado Blvd., Ste 500, Pasadena, California 91105</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: OCT 17 2011                    By: _____ ANDRES PEDRO
                                            Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

CITY OF LOS ANGELES, a municipal corporation

**DEFENDANTS**

LAFD FOUNDATION, INC., a California non-profit public benefit corporation

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Brian K. Brookey
brian.brookey@cph.com
Christie, Parker & Hale, LLP
350 West Colorado Blvd., Suite 500
Pasadena, CA 91105
Phone: 626-795-9900; Fax: 626-577-8800

**Attorneys** (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT: $** according to

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Trademark infringement and unfair competition under the Trademark Act, Title 15 U.S.C. Section 1125(a); statutory unfair competition under California Business and Professions Code Section 17200.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Accommodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

---

**FOR OFFICE USE ONLY:** Case Number: CV11-08596-GW(SSx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2
CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a).   IDENTICAL CASES:**  Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

If yes, list case number(s): _____

**VIII(b).   RELATED CASES:**  Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)      [ ]  A.  Arise from the same or closely related transactions, happenings, or events; or

                                  [ ]  B.  Call for determination of the same or substantially related or similar questions of law and fact; or

                                  [ ]  C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

                                  [ ]  D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ]  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ]  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _Brian K. Brookey_                    Date _October 17, 2011_

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |